```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

Harold Peterson

    v.                                    Civil No. 10-cv-170-JL
                                                 Opinion No. 2011 DNH 052
United States of America et al.

## MEMORANDUM ORDER

The issue in this case is whether a Medicare recipient has standing to challenge the constitutionality of the Patient Protection and Affordable Care Act (the "Act"),[1] a federal health care bill enacted last year.  Plaintiff Harold Peterson, proceeding pro se, brought suit against the United States of America and other federal defendants, alleging that the Act violates various provisions of the United States Constitution: the Commerce Clause,[2] the Takings Clause,[3] the Presentment

---

[1] See Pub. L. No. 111-148, 124 Stat. 119 (Mar. 23, 2010), as amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (Mar. 30, 2010).

[2] See U.S. Const. art. I, § 8, cl. 3 (giving Congress power "[t]o regulate Commerce . . . among the several States").

[3] See U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation").

Clause,[4] the Presidential Oath of Office Clause,[5] and the Ninth and Tenth Amendments.[6]  He challenges, in particular, the Act's mandate that citizens purchase health insurance coverage, as well as the manner in which the Act was passed.

The defendants have moved to dismiss the case for lack of subject-matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), arguing that Peterson has no standing to challenge the Act because his Medicare coverage automatically satisfies the Act's health insurance mandate and because his other allegations of injury are too speculative.  After hearing oral argument, this court grants the motion.  While the Act, and particularly its health insurance mandate, may raise interesting constitutional issues, compare Mead v. Holder, No. 10-950, 2011 WL 611139, 2011 U.S. Dist. LEXIS 18592 (D.D.C. Feb. 22, 2011) (upholding the Act

---

[4]See U.S. Const. art. I, § 7, cl. 2 ("Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President . . . .").

[5]See U.S. Const. art. II, § 1, cl. 8 ("I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States.").

[6]See U.S. Const. amends. IX ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.") and X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.").

against constitutional challenge), Liberty Univ., Inc. v. Geithner, No. 10-15, 2010 WL 4860299, 2010 U.S. Dist. LEXIS 125922 (W.D. Va. Nov. 30 2010) (same), and Thomas More Law Ctr. v. Obama, 720 F. Supp. 2d 882 (E.D. Mich. 2010) (same), with Florida v. U.S. Dep't of Health & Human Servs., 10-91, 2011 WL 285683, 2011 U.S. Dist. LEXIS 8822 (N.D. Fla. Jan. 31, 2011) (declaring the Act unconstitutional), and Virginia ex rel. Cuccinelli v. Sebelius, 728 F. Supp. 2d 768 (E.D. Va. 2010) (declaring the mandate unconstitutional), Peterson has no standing to litigate them.

I.  **Applicable legal standard**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." United States v. Coloian, 480 F.3d 47, 50 (1st Cir. 2007) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)) (formatting altered).  "It is to be presumed that a cause [of action] lies outside this limited jurisdiction," and the burden lies with the plaintiff, as the party invoking the court's jurisdiction, to establish that it extends to his claims. Kokkonen, 511 U.S. at 377; see also Pejepscot Indus. Park v. Me. Cent. R.R., 215 F.3d 195, 200 (1st Cir. 2000).  "Without jurisdiction the court cannot proceed at all in any cause.

Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).

In evaluating the defendants' motion to dismiss for lack of jurisdiction under Rule 12(b)(1), this court must "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975). Moreover, because Peterson is proceeding pro se,[7] his complaint must be construed liberally, "held to less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976). But these standards do not require the court to "credit bald assertions, subjective characterizations, . . . problematic suppositions," or "empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts" in the complaint. Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998) (formatting altered).

---

[7] Peterson informed the court at oral argument that he used to be an attorney, but is no longer practicing. The court will treat him as it would any other pro se litigant.

## II. Background

The Patient Protection and Affordable Care Act, passed by Congress and signed into law by the President in March 2010, is a federal statute designed to reform the American health care system. The Act mandates that every citizen, other than those falling within specified exceptions, maintain a minimum level of health care insurance coverage beginning in 2014 (or else pay a penalty to be assessed and collected as a tax). See 26 U.S.C. § 5000A.[8]  Once that mandate becomes effective, health insurance plans will be prohibited from excluding coverage for pre-existing medical conditions. See 42 U.S.C. § 300gg-3.  The Act provides for subsidies that will limit the costs of maintaining minimum coverage for citizens making less than 400 percent of the poverty level (currently about $88,000 for a family of four), see 26 U.S.C. § 36B, and conversely imposes a tax on high-cost health insurance plans, see id. § 4980I, known colloquially as "Cadillac" plans.

The Act also makes a number of changes to Medicare, a federal program that provides health care coverage for most citizens 65 years of age or older.  For example, the Act

---

[8]The Act also requires large employers to offer their full-time employees a minimum level of health care insurance coverage beginning in 2014 (or else pay a penalty to be assessed and collected as a tax).  See 26 U.S.C. § 4980H.

increases the Medicare prescription drug benefit, imposes additional Medicare taxes on high-wage earners and investment income, constrains the rates that Medicare pays to certain types of health care providers, and brings the subsidies for Medicare Advantage plans (private plans through which beneficiaries may elect to receive Medicare benefits) into line with traditional Medicare payments.  See Patricia A. Davis et al., Cong. Research Serv., R41196, Medicare Provisions in the Patient Protection and Affordable Care Act: Summary and Timeline (Nov. 3, 2010).  The Act expressly provides that none of its provisions "shall result in a reduction of guaranteed benefits" to Medicare participants. Pub. L. No. 111-148, supra, §§ 3601 and 3602.

    Peterson, a citizen of New Hampshire, is self-employed and currently receives health care coverage through Medicare.  He also purchases supplemental private health insurance from Anthem Blue Cross and Blue Shield.  Anthem recently "advised [him] of an increase in his premiums beginning at the expiration of his present [insurance] term because of the Act."  According to media reports, Anthem is one of many insurance companies that have attributed premium increases to the Act.  See Janet Adamy, Health Outlays Still Seen Rising, Wall St. J., Sept. 8, 2010, at A7. Based on "information broadcast and published by various news media," Peterson also fears that he "may suffer a loss of

Medicare benefits in subsequent years" and "increased costs" as a result of the Act, which by "reducing the Medicare budget . . . could endanger the healthcare coverage for all members of Medicare."

Peterson brought this pro se lawsuit in May 2010 to challenge the constitutionality of the Act, seeking both declaratory and injunctive relief.  He named an array of defendants:  the United States of America, the United States Senate and House of Representatives, the President, and the Secretary of Health and Human Services.  His complaint alleges, in particular, that the Act's mandate that citizens purchase health insurance coverage violates the Takings Clause (because it takes "private property . . . for public use, without just compensation," U.S. Const. amend. V), the Commerce Clause (because it does not "regulate Commerce . . . among the several States," U.S. Const. art. I, § 8, cl. 3, but rather decisions not to engage in commerce by purchasing insurance), and the Ninth and Tenth Amendments (because it falls outside of Congress's enumerated powers).

Peterson also claims that the Act is unconstitutional because of the manner in which it was passed.  He alleges, in particular, that the Act violates the Presentment Clause, see U.S. Const. art. I, § 7, cl. 2, because the version passed by the

7

Senate differs from the one passed by the House (due to the reconciliation bill cited in note 1, supra), and because the Act covers subjects other than health care, such as student loans. Relatedly, he alleges that the President violated his oath of office, see U.S. Const. art. II, § 1, cl. 8, by knowingly signing an unconstitutional bill.[9]

### III.  Analysis

The Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992) (quoting U.S. Const. art. III, § 2, cl. 1). "To satisfy the Constitution's 'case or controversy' requirement, a party seeking relief in federal court must show that he has suffered an actual injury, which is fairly traceable to the defendant's conduct and redressable by a favorable judicial decision." Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 666 (1st Cir. 2010) (citing Lujan, 504 U.S. at 560-61). That is commonly known as the doctrine of "standing." Peterson argues that "standing is a fiction created by the courts" and that he need not satisfy any such requirement.

---

[9] Peterson also initially alleged that the Act violated the Interstate Privileges and Immunities Clause, see U.S. Const. art. IV, § 2, cl. 1, but has since withdrawn that claim, acknowledging that it lacks merit. See document no. 23, at 3.

But the Supreme Court has called the standing requirement "essential and unchanging," Lujan, 504 U.S. at 560, and this court must follow Supreme Court precedent. See, e.g., Evans v. Thompson, 518 F.3d 1, 9 (1st Cir. 2008) ("Many limitations on the ability of federal courts to grant relief originate . . . from binding Supreme Court precedent.").

"Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) (quotations omitted). In this case, the defendants argue that Peterson lacks standing to bring his claims challenging the Act's health insurance mandate because he is covered by Medicare, which automatically satisfies the mandate. They also argue that Peterson lacks standing to bring his other claims challenging the manner in which the Act was passed, because his allegations of injury are too speculative (and because the President and members of Congress have absolute immunity from such claims[10]). This court will analyze each set of claims in turn. As explained below, Peterson lacks standing to litigate any of them.

---

[10]This court need not reach that immunity issue, in light of its conclusion that Peterson lacks standing.

9

### A. *Claims challenging the mandate*

Many courts have already considered whether citizens have standing to challenge the constitutionality of the Act's health insurance mandate, with mixed results. Some courts have concluded that citizens had standing where they plausibly alleged that they would incur financial or other burdens to satisfy the mandate. See Mead, 2011 WL 611139, at *5-8, 2011 U.S. Dist. LEXIS 18592, at *15-27; Goudy-Bachman v. U.S. Dep't of Health & Human Servs., No. 10-763, 2011 WL 223010, at *4-7, 2011 U.S. Dist. LEXIS 6309, at *11-19 (M.D. Pa. Jan. 24, 2011); U.S. Citizens Ass'n v. Sebelius, No. 10-1065, 2010 WL 4947043, at *5, 2010 U.S. Dist. LEXIS 123481, at *13 (N.D. Ohio Nov. 22, 2010); Florida v. U.S. Dep't of Health & Human Servs., 716 F. Supp. 2d 1120, 1144-48 (N.D. Fla. 2010); Thomas More, 720 F. Supp. 2d at 887-89.

Other courts have found no standing because the plaintiffs' allegations of injury were too speculative, or reflected merely a generalized grievance with the Act. See Bryant v. Holder, No. 10-76, 2011 WL 710693, at *8-13, 2011 U.S. Dist. LEXIS 23975, at *24-40 (S.D. Miss. Feb. 3, 2011); N.J. Physicians, Inc. v. Obama, No. 10-1489, 2010 WL 5060597, at *3-7, 2010 U.S. Dist. LEXIS 129445, at *8-22 (D.N.J. Dec. 8, 2010); Shreeve v. Obama, No. 10-71, 2010 WL 4628177, at *2-4, 2010 U.S. Dist. LEXIS 118631, at

10

*7-11 (E.D. Tenn. Nov. 4, 2010); Baldwin v. Sebelius, No. 10-1033, 2010 WL 3418436, at *3-4, 2010 U.S. Dist. LEXIS 89192, at *8-13 (S.D. Cal. Aug. 27, 2010).[11]

This appears to be the first case, however, brought by a Medicare recipient.  As the defendants note, Medicare coverage automatically satisfies the Act's health insurance mandate.  See 26 U.S.C. § 5000A(f)(1)(A)(I).  So Peterson will not have to incur any financial burdens, or indeed do anything at all, to satisfy the mandate.  The federal government will satisfy it for him.  Cf. Mead, 2011 WL 611139, at *6, 2011 U.S. Dist. LEXIS 18592, at *17-19 (noting, in dicta, that plaintiff who would become Medicare-eligible by 2014 would not be subject to penalties for failing to satisfy the mandate, "which compels the conclusion that she lacks standing").  Because Peterson has not plausibly alleged an injury "fairly traceable" to the mandate, Coggeshall, 604 F.3d at 666 (citing Lujan, 504 U.S. at 560-61), he lacks standing to bring his claims challenging the mandate under the Takings Clause, the Commerce Clause, and the Ninth and Tenth Amendments.  All of those claims must therefore be

---

[11]Another case found standing for uninsured citizens, but not for those who already have private health insurance.  Liberty Univ., 2010 WL 4860299, at *4-7 & n.6, 2010 U.S. Dist. LEXIS 125922, at *11-26 & n.6.

dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

B.  *Claims challenging the Act's passage*

Peterson's other set of claims challenge the manner in which the Act was passed.  He makes essentially two arguments for standing on those claims.  The first is that the Act has caused his supplemental private health insurance premiums to rise.  But for that injury to confer standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Lujan, 504 U.S. at 561.  Peterson is not seeking monetary damages in this case, so there is no likelihood that the premium increases will be redressed in that manner.  And his supplemental insurer is not a party to this case, so a judgment in Peterson's favor would not require it to rescind or reduce the premium increases.  Peterson is merely speculating about how a third party might respond if the Act is struck down as unconstitutional.

"There is no redressability, and thus no standing, where (as is the case here) any prospective benefits depend on an independent actor who retains 'broad and legitimate discretion the courts cannot presume either to control or to predict.'" Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.,

465 F.3d 1123, 1125 (9th Cir. 2006) (quoting ASARCO, Inc. v. Kadish, 490 U.S. 605, 615 (1989) (plurality opinion)).  For example, in Glanton, the "[p]laintiffs claim[ed] that, if their suit [was] successful" in proving that the defendant, a pharmacy benefit manager, charged their health plans too much for prescription drugs, "the plans' drug costs [would] decrease, and that the plans might then reduce contributions or co-payments." Id.  But the Ninth Circuit Court of Appeals found no standing, explaining that "nothing would force [the health plans] to" pass any savings down to the plaintiffs and that the plans "would be free" to keep the savings for themselves.  Id.

While the First Circuit Court of Appeals has not yet confronted a similar situation, "[o]ther circuits that have considered this issue have reached the same conclusion" as the Ninth Circuit.  Id. (citing examples); see also 15 James Wm. Moore et al., Moore's Federal Practice § 101.42[5], at 101-87 (3d ed. 2010).  For example, in Burton v. Central Interstate Low-Level Radioactive Waste Compact Comm'n, 23 F.3d 208, 210 (8th Cir. 1994), the plaintiffs claimed that if they succeeded in proving that the defendant, an interstate waste disposal commission, had imposed unlawful taxes on their electricity provider, the provider "would adjust its rates" downward.  Id. But the Eighth Circuit Court of Appeals found no standing,

13

explaining that the complaint "does not allege . . . that state law obligates [the provider] to base its rates in any way on [the] costs" in question, so "it is 'merely speculative' here whether a favorable decision would affect the . . . rate that [plaintiff] pays." Id. (quoting Lujan, 504 U.S. at 561). The same analysis applies here.[12]

Peterson also argues that he has standing because the Act "may" cause him to "suffer a loss of Medicare benefits in subsequent years," resulting in increased out-of-pocket costs for health care. But the Act expressly states that none of its provisions "shall result in a reduction of guaranteed benefits" to Medicare participants. Pub. L. No. 111-148, §§ 3601 and 3602. Of course, the mere existence of that provision does not necessarily guarantee its intended result. At this point, however, one can only speculate about what the Act's ultimate effect on Medicare benefits will be. While the Act does include some provisions designed to contain Medicare spending, it also increases Medicare benefits in some respects (e.g., for prescription drugs) and assesses new taxes to help pay for them.

---

[12]This is not a case of "procedural injury," i.e., deprivation of procedural rights, where "plaintiffs receive special treatment" and the redressability requirement is somewhat less demanding. Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 27 (1st Cir. 2007) (quotation omitted).

See Part II, supra; Davis et al., supra.  Peterson's speculation that the net effect of the Act "may" be a future reduction of benefits--contrary to the Act's express language--is not enough to confer standing.

Moreover, Peterson has not specified which of the Act's changes to Medicare would affect him personally, or explained how they would do so.  See, e.g., Bingham v. Massachusetts, 616 F.3d 1, 3 (1st Cir. 2010) ("a vague allegation of harms . . . is not the kind of concrete, particularized injury required to show standing").  He is merely raising a general grievance about changes to a program that provides health care coverage to most citizens (once they reach the age threshold).  The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government--claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large--does not state an Article III case or controversy."  Lujan, 504 U.S. at 573-74; see also, e.g., Hollander v. McCain, 566 F. Supp. 2d 63, 67 (D.N.H. 2008).

In sum, Peterson has not alleged sufficient facts, relating either to his Medicare benefits or his supplemental private health insurance premiums, to give him standing to challenge the

manner in which the Act was passed. His claims under the Presentment Clause and Presidential Oath of Office Clause must therefore be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

Moreover, even if Peterson had standing to bring those claims, they would be dismissed on the merits anyway. See Fed. R. Civ. P. 12(b)(6); document no. 21 (ordering Peterson, after oral argument, to show cause why the claims should not be dismissed under Rule 12(b)(6)). Peterson has not articulated a viable theory in support of either claim. Nor has this court been able to identify one:

- Peterson alleges, first, that the Act violates the Presentment Clause because the version passed by the Senate differs from the one passed by the House, due to the reconciliation bill cited in note 1, supra. But the House and Senate each passed, and the President signed, both bills, so that claim has no merit. Cf., e.g., Nevada v. Watkins, 914 F.2d 1545, 1557 (9th Cir. 1990) (deeming a Presentment Clause challenge "unpersuasive in view of the fact . . . that [a reconciliation bill] was passed in accordance with" the clause).[13]

- Peterson alleges that the Act also violates the Presentment Clause because it covers subjects other than health care,

---

[13] If Peterson is disputing that those bills each passed the House and Senate, then his claim is barred by the "enrolled bill" rule, which "requires the judicial department . . . to accept, as having passed Congress, all bills authenticated" in regular form by the appropriate House and Senate officials. Marshall Field & Co. v. Clark, 143 U.S. 649, 672 (1892); see also United States v. Farmer, 583 F.3d 131, 151-52 (2d Cir. 2009); Pub. Citizen v. U.S. Dist. Ct. for D.C., 486 F.3d 1342, 1349-50 (D.C. Cir. 2007).

such as student loans.  But there is no "single-subject" requirement in the Presentment Clause, as there is in many state constitutions.  See 73 Am. Jur. 2d Statutes § 55 (2010).

- Finally, Peterson alleges that the President violated his oath of office by knowingly signing an unconstitutional bill.  But courts have consistently ruled that such a claim is not cognizable.  See, e.g., Ramp v. Bush, No. 08-336, 2008 WL 686727, at *1, 2008 U.S. Dist. LEXIS 19401, at *1 (N.D. Ohio Mar. 13, 2008) (explaining that whether the President complied with his oath of office is "indisputably a political question," not a justiciable one); Catholic Charities CYO v. Chertoff, No. 07-1307, 2007 WL 2344995, at *8, 2007 U.S. Dist. LEXIS 62732, at *22 (N.D. Cal. Aug. 16, 2007); Sadowski v. Bush, 293 F. Supp. 2d 15, 19 (D.D.C. 2003).  Moreover, the claim is entirely derivative of Peterson's other (dismissed) claims, in that it would require a showing that the Act violates the Constitution in some other respect.

## IV. Conclusion

For the reasons set forth above, the defendants' motion to dismiss the case for lack of subject matter jurisdiction[14] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 30, 2011

---

[14]Document no. 10.

cc: Harold Peterson, pro se
    Eric R. Womack, Esq.
    T. David Plourde, Esq.